# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD MALBROUGH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-5162** |
| **PARKER DRILLING OFFSHORE USA, LLC** | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court is Defendant Baywater Drilling, LLC's motion for summary judgment. R. Doc. 24. Plaintiff has submitted no opposition. For the reasons that follow, the unopposed motion is GRANTED.

### I.  BACKGROUND

Plaintiff Ronald Malbrough, a wireline operator for Baker Hughes, brings this action against Baywater Drilling, LLC ("Baywater") for damages allegedly sustained on a barge moored alongside a Baywater drilling barge. Malbrough asserts his claim under the third party liability provision of the Longshore Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b).

On June 22-23, 2016, Malbrough and three other Baker Hughes operators were sent to the Baywater barge to perform wireline work. Only Baker Hughes employees and property, including a truck loaded with wireline tools and the wireline unit, were on the barge. The crew participated in a Baywater Safety Briefing upon arrival, which emphasized proper lifting techniques and instructed the operators to seek mechanical help or assistance "if there is any doubt at all."

The larger, heavier tools were offloaded from the barge by the Baywater crane operator, and the Baker Hughes crew were responsible for attaching the crane slings and straps to accomplish the lift and for signaling the crane operator. The smaller tools were loaded by the Baker

1

Hughes crew into a Baywater cargo basket and lifted to the rig floor by the Baywater crane.

On the date of the accident, a Baker Hughes operator loaded the Baywater cargo basket with the smaller wireline tools, including a sheave weighing 120 pounds. The operator chose to place the sheave into the basket, although it could have been attached directly to the crane slings and lifted separately. The Baywater crane operator lowered the basket to the work barge, as directed by Malbrough.

Malbrough began to unload the cargo basket while the crane was still attached. During the transfer from the rig floor, the sheave became lodged in the grating of the basket, and Malbrough had to wiggle it free. In his complaint, Malbrough alleges that the basket chosen by the Baywater crew was chest-high and very deep, which required him to stand on his toes and reach into the basket to remove the heavy tool. In doing so, Malbrough allegedly herniated a disc in his neck.

## II. PRESENT MOTION

Baywater moves for summary judgment. R. Doc. 24 Malbrough has not opposed.

Malbrough made several relevant admissions in his deposition testimony. First, he acknowledged that he had not followed the pre-job Baywater Safety Briefing, and stated that he knew he was not following proper lifting technique at the time of the accident. R. Doc. 24-2 at 17. He admitted that, since the crane was still attached to the basket, he could have easily used the crane to lift the sheave. *Id.* Finally, although Malbrough alleges in his complaint that the Baywater crew loaded the sheave into a chest-high basket and that he had to stand on his toes to remove it, Malbrough admitted in his deposition that the basket was only waist-high; that it was loaded by Baker Hughes, not Baywater; and, importantly, that his injury occurred when he was *in the basket* pulling on the sheave – not when he was reaching over into the basket. R. Doc. 24-2 at 21.

## III. LAW AND ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

Baywater's conduct is judged under the three limited vessel-owner duties established by

3

the Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos*: (1) the turnover duty; (2) the active control duty; and (3) the duty to intervene. 451 U.S. 156 (1981). A vessel owner must provide work space, equipment, and tools in a condition that allows a contractor, acting with reasonable care, to carry on his operations with reasonable safety. *Id.* at 166-67. The vessel owner must warn of hidden danger that the owner knows, or should know about in the exercise of reasonable care. *Id.* Importantly, the vessel owner need not supervise, inspect, or monitor the contractor's operations for dangerous conditions that develop during the work relationship. *Id.* at 169-72. *See also Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1245 (5th Cir. 1997).

There is no issue of material fact as to whether Baywater breached any of the three *Scindia* duties. First, Baywater did not violate its turnover duty by failing to warn Baker Hughes of any hidden defects. "[M]erely proving that an unsafe condition existed at the time of the accident is insufficient to establish liability." *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 166 (5th Cir. 1990). More importantly, "[t]he defendant has not breached its duty to turn over a safe vessel if the defect causing injury is open and obvious and one that the longshoreman should have seen." *Greenwood*, 111 F.3d at 1246 (citations omitted). "If the longshoremen knew of the defect, then it is considered open and obvious." *Id.*

Baker Hughes are experts in wireline operations, including loading and unloading their equipment. There was no hidden danger. The condition of the basket and sheave were open and obvious to Malbrough, who admitted that there was adequate lighting to see the equipment and that his accident happened while performing work "just like we normally do, just take everything out of the basket, and then [the crane operator] picks [the basket] up." R. Doc. 24-2 at 18.

As to the second *Scindia* duty, Malbrough cannot raise a question of material fact that his injury was caused by hazards under Baywater's control. The barge was entirely under the control

4

of Baker Hughes, and all property – except for the Baywater basket, which was loaded by Baker Hughes with its own tools – on the barge was owned by Baker Hughes. There is no evidence that Baywater controlled the method of loading or unloading the basket.

The third *Scindia* duty applies when the vessel owner fails to intervene in the stevedore's operations when it has actual knowledge of a hazard and that the stevedore, in the exercise of obviously imprudent judgment, means to work on in the face of it. The Baywater crane operator was unaware of any hazard. Malbrough's manual handling of the sheave and its placement in the basket is common, and would not have raised any flags. Further, Malbrough estimates that the entire event lasted no more than two minutes. Baywater could not have reasonably assumed that Malbrough would exercise "obviously imprudent judgment" by failing to follow proper lifting techniques. *See Greenwood*, 111 F.3d at 1249 (An "expert stevedore must use an object with a defective condition that is so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm – even when the stevedore's expertise is taken into account.").

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (R. Doc. 24) is hereby **GRANTED** and all claims against Defendant Baywater are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 27th day of August, 2018.

*[signature]*
UNITED STATES DISTRICT JUDGE

5